UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Civil Action No.

MINDY MACCLUSKEY )
　)
　　　PLAINTIFF )
　)
v. )
　)
UNIVERSITY OF )
CONNECTICUT HEALTH )
CENTER )
　)
　　　DEFENDANT )

## COMPLAINT

### Background

1. The Plaintiff, Mindy MacCluskey ("MacCluskey"), is a natural person with a residence in Willimantic, Connecticut.

2. The Defendant, University of Connecticut Health Center ("Health Center") is an administrative sub-division of the State of Connecticut and a State of Connecticut education, research and health care facility and has its principal place of business at Health Center Administration, 263 Farmington Avenue, Farmington, Connecticut.

3. The Health Center employs more than fifteen (15) employees.

4. Jurisdiction and venue are proper under 42 U.S.C. § 2000e - 5(f)(3).

5. On or about April 15, 2011, MacCluskey filed a complaint with the State of Connecticut Commission on Human Rights and Opportunities ("CHRO")

and with the Equal Employment Opportunity Commission ("EEOC") against the Health Center.

6. MacCluskey received a right to sue letter from the EEOC, dated September 17, 2013, for her claims against the Health Center, a copy of which is attached hereto as Exhibit "A".

## FACTS

7. MacCluskey began her employment with the Health Center in December, 2008.

8. On or about December, 2010, MacCluskey transferred from being a part-time dental assistant at the Manson Youth Institute ("Manson") to being a full-time dental assistant in the Walker Correctional Facility ("Walker").

9. Michael Young, a dentist employed by the Health Center ("Young"), was assigned to Walker.

10. MacCluskey's direct supervisor was Young.

11. MacCluskey had previously worked with Young at Manson. Young had previously made sexually harassing remarks to MacCluskey.

12. Young had previously sexually harassed a nurse and also another dental assistant, Arleana Duffy. Instead of terminating Young for the earlier incidents of sexual harassment, the Health Center entered into a "Last Chance" Stipulated Agreement with Young ("Agreement") under which he was to remain employed at the Health Center. The Agreement included the provision that,

2

> The Health Center has entered into this 'last chance' agreement in lieu of the dismissal of Dr. Young. Therefore, in consideration of his being given this additional chance, Dr. Young agree[s] that any future instances of unsolicited flirtatious letters or comments to any employee, or any behavior similar to this, shall be grounds for dismissal.

13. See Agreement attached hereto as Exhibit "B".

14. In October, 2010, Young began sending MacCluskey sexually harassing e-mails.

15. On or about October 29, 2010, Young sent an e-mail to MacCluskey regarding MacCluskey's transfer to Walker, and stated that there would be some "ground rules", including that the two "kiss each other before work and when leaving." See e-mail attached hereto as Exhibit "C".

16. MacCluskey was afraid to report Dr. Young at this time because he was her direct supervisor and she was under probation because she was just beginning a new position.

17. Starting in December, 2010, Young began initiating inappropriate physical contact with MacCluskey, such as touching her hair and shoulders, and hugging her. At one point, Young kissed MacCluskey's neck. Young also frequently massaged MacCluskey's shoulders.

18. On December 20, 2010, Young sent an e-mail to MacCluskey which included the following, "Mindy, how are you doing there alone? It's lonely down here and it's a semi lockdown. 'Absence makes the heart grow fonder' some poet once said. Between you and the walls I will be out 'sick' tomorrow so I will see you on Wednesday." See e-mail attached hereto as Exhibit "D".

19. On December 20, 2010, Young sent MacCluskey an email which stated, "So any wild party over the weekend?  Crazy hookups?  Something??  It's numbing down here.  Need some excitement even if it's yours."  MacCluskey responded, "no wild parties and never crazy hookups!  Only boring Christmas shopping and holiday baking.  Did you get all your shopping done?"  Young replied as follows:

> Me, finish shopping?  Heck I am looking at a Victoria's Secret booklet and trying to order something for you.  I got a few more days it may not be wrapped but I'll get there.  Ok how about not so crazy hookups?  Huh?  So what are you doing besides reading?  I have been composing email regarding new scheduling system.  I'm going to get in trouble ha!  So any ideas u want from VS?  Lingerie, sleepwear, sweater, help me out here?  God it's going to be a long day Rihanna again on the radio (3x and counting).

20. See e-mails attached hereto as Exhibit "E".

21. In December, 2010, Young brought a Victoria's Secret catalog to work and asked MacCluskey to model various swim suits.

22. On January 20, 2011, MacCluskey sent Young an e-mail requesting his signature on a document.   Respondent replied, "Yeah, that's it, use me for my signature well I love you 2." See e-mail attached hereto as Exhibit "F".

23. On January 31, 2011, Young sent MacCluskey an e-mail in which he asked if she "would be okay with an old guy asking [her] out to dinner?"  See e-mail attached hereto as Exhibit "G".

24. On February 2, 2011, Young sent MacCluskey an e-mail in which he stated, "Hi I want to make you blush every time I see you (which hasn't

4

been much lately).  So how can I do it that will make you laugh too because I really like your smile too.  Maybe you'll tell me Friday if it's not snowing, sleeting or iced over." See e-mail attached hereto as Exhibit "H".

25. On February 7, 2011, Young sent MacCluskey an email, responding to a inquiry by MacCluskey as why he had done the schedules, and stated, "I had time to do the schedules so I did, one less thing for u to do so u can come up with an idea I can use to make you blush." See e-mail attached hereto as Exhibit "I".

26. On February 14, 2011, Young sent a Valentine's day present to MacCluskey's home.  This terrified MacCluskey, as she had never given Young her home address and after this, she was afraid to be home alone.

27. Young's inappropriate and illegal conduct was sufficiently severe and pervasive to create an abusive working environment.

28. On February 24, 2011, MacCluskey filed an incident report with the Health Center concerning Young's sexual harassment of her.

29. On February 25, 2011, Young sent MacCluskey an e-mail in which he stated, "Hi Mindy, I was wondering where you were today. I now know why.  I am an idiot and I did not know it was bothering that much.  I am sorry for the harassment.  And I hope in time you will accept my apologies. Mike." See e-mail attached hereto as Exhibit "J".

30. The University of Connecticut Office of Diversity and Equity ("ODE") conducted an investigation and substantiated MacCluskey's claims.  In its report, the ODE recommended that "serious consideration be given to imposing a level of disciplinary action on the more significant end of the

5

continuum, up to and including termination of employment."   See report attached hereto as Exhibit "K".

31. Young was not terminated as a result of his sexual harassment of MacCluskey, but was allowed to resign effective March 23, 2011.

32. MacCluskey received phone calls after this where no one would say anything when she picked up the phone.  MacCluskey became afraid to answer her home phone.

33. The Health Center failed to exercise reasonable care to protect MacCluskey from Young's sexually harassing behavior.

34. The Health Center knew or should have known of the harassment of MacCluskey.

35. The Health Center is liable for Young's conduct as Young had supervisory authority over MacCluskey.

## COUNT I – DISCRIMINATION BASED ON GENDER
## 42 U.S.C. § 2000(e) et seq. (Title VII)

36. MacCluskey realleges, repeats, and reiterates each of the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

37. The conduct and action of the Health Center violated 42 U.S.C. § 2000(e) et seq.

38. As a direct and proximate result of such conduct and actions, MacCluskey has suffered, and continues to suffer from damages including, but not limited to emotional distress.

## COUNT II- HOSTILE WORK ENVIRONMENT
## 42 U.S.C. § 2000(e) et seq. (Title VII)

39. MacCluskey realleges, repeats, and reiterates each of the allegations contained in Paragraphs 1 through 39 as if fully set forth herein.

40. The conduct and actions of the Health Center was in violation of 42 U.S.C. § 2000(e) et seq.

41. As a direct and proximate result of such conduct and actions, MacCluskey has suffered, and continues to suffer from damages including, but not limited to emotional distress.

WHEREFORE, the Plaintiff, Mindy MacCluskey, hereby requests:

1. Judgment enter in her favor on each count of the Complaint;

2. Damages be assessed, including, but not limited to, compensatory damages, including emotional distress damages;

3. Punitive damages be awarded;

4. Her costs and attorney's fees be awarded; and

5. For other such relief as this Court deems proper.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

                    Respectfully submitted,

                    The Plaintiff,
                    Mindy MacCluskey,
                    By her attorney,

                    <u>/s/ Tani E. Sapirstein</u>
                    Tani E. Sapirstein, Esq.
                    Federal Bar No. 21160
                    Juris No. 102819
                    SAPIRSTEIN & SAPIRSTEIN, P.C.
                    1350 Main St., 12th Floor
                    Springfield, MA 01103
                    Tel. (413) 827-7500
Dated: September 25, 2013      Fax (413) 827-7797

K:\CASEFILE\MacCluskey, Mindy v. Univ. Conn. Health Center\Complaint.doc